[No. 36713. Department Two. December 31, 1964.]

ROBERTA M. BAXTER et al., as *Coadministratrices, Appellants,* v. THE GREYHOUND CORPORATION et al., *Respondents and Cross-appellants.*\*

*Reported in 397 P. (2d) 857.

Alan A. McDonald (of Halverson, Applegate, McDonald & Weeks) and James P. Moceri (of Sterbick, Manza, Moceri & Sterbick), for appellants.

Murray, Dunham & Waitt and Kenneth S. Hawkins, for respondents and cross-appellants.

HAMILTON, J.—This is a wrongful death action arising out of a collision between a moving vehicle, driven by George S. Baxter, deceased, and a Greyhound bus stalled on Primary State Highway No. 10, just north of the old Vantage Bridge crossing of the Columbia River.[1] The accident occured after nightfall on November 19, 1960, at approximately 9:30 p.m.

---

[1] The scene where the collision occurred has been substantially altered by completion of the Wanapum Dam on the Columbia River.

The action was instituted by the coadministratrices of the estate of George S. Baxter, deceased, on behalf of his surviving spouse, Roberta Baxter, and his three minor children by a former marriage to Evelyn Seeley. Both The Greyhound Corporation, as owner of the bus, and the bus driver, Frank W. Phelps, were named as defendants.

The issues of the bus driver's negligence and decedent's contributory negligence were submitted to the jury. It returned a verdict for plaintiffs in the amount of $90,876. By answers to special interrogatories, the jury segregated the amount awarded as follows: To the surviving spouse, $48,376, and to the minor children, $42,500. Defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied the former and granted the latter portion of defendants' motion. From this order, both parties appeal.

The order denying judgment notwithstanding the verdict and granting new trial, quoting extensively from the trial court's oral opinion, states, *inter alia:*

". . . That the defendant's motion for judgment notwithstanding the verdict is hereby denied, for the reason that the decision of the Supreme Court in the case of Kegler vs. Hogland Transfer Company, 197 Wash., 566, the Court held that the trial court in a case where no flares were placed on the highway and an accident occurred, was precluded from holding that the defendant or decedent, as the case may be, was guilty of negligence as a matter of law, and the case should be submitted to the jury. In the absence of this decision, defendant's motion for dismissal of plaintiff's cause of action at the conclusion of the plaintiff's case and the defendant's motion for directed verdict at the conclusion of all the evidence, should have and would have been granted.

". . . That the defendant's motion for a new trial be and the same is hereby granted upon the following grounds:

"I.

"Irregularity in the proceedings of the Court and in an order of the Court, or abuse of discretion by which the defendant was prevented from having a fair trial.

"This error occurred by the Court denying the defendant's motion for a directed verdict, and the defendant's motion

for dismissal at the conclusion of plaintiff's case, and in failing to find that the decedent, George S. Baxter, was guilty of contributory negligence as a matter of law.

". . .

## "II.

"The damages fixed by the jury are so excessive to indicate that the verdict must have been the result of passion or prejudice.

"The verdict of the jury is so large as to be wholly beyond the evidence of the case. . . . The decedent had three minor children by his first wife and was obligated to pay $150.00 per month as child support in accordance with the terms of the decree of divorce. He was married to his widow on the same day that he procured a divorce from his first wife. His wife, or present widow, worked in a drug store continuously during all of their married life, which only lasted about eighteen months. The decedent had not been earning over $5,600.00 a year at the most in recent years, and in the last year his business showed a loss of $3,000.00. His wife apparently never depended upon him for support. Under these circumstances, and the evidence in the case, the amounts awarded to the widow and the three minor children are so excessive as to shock the conscience of the Court, and no doubt, were the result of passion and prejudice on the part of the jury. In this instance the widow, the former wife and the three minor children were all residents of the city of Yakima. Practically all of the witnesses for the plaintiffs were passengers in the bus, business men and residents of the city of Yakima, and acquainted with decedent's wife and former wife and the children and friends of the decedent, George S. Baxter. The members of the jury appeared to be acquainted with all of the witnesses. Three incidents occurred during the trial which could be classed as misconduct on behalf of counsel for the plaintiffs, and which no doubt generated passion and prejudice of the jury. . . . [(1) Demand by plaintiffs' counsel upon defendants' counsel for the production of certain evidence. (2) Retrieving certain calculations and sketches made by a witness which defendants' counsel had cast in the waste basket. (3) Advising the jury that plaintiffs had reduced the amount of their claim from $600,000 to $250,000.]

## "III.

"That substantial justice has not been done. The verdict of the jury is contrary to the weight of the evidence.

"The decedent was guilty of contributory negligence.

The jury failed to follow the Court's instructions in regard to contributory negligence, and the sufficiency of warning. There appeared to be a great friendliness of all the witnesses for the plaintiffs in the matter. The evidence clearly shows that the decedent was guilty of contributory negligence, and should not be permitted to recover under the circumstances. The amount of the verdict was excessive. . . . a new trial should be granted on the basis that from all of the evidence substantial justice has not been done."

Because of the number and severability of the issues raised by the assignments of errors, we shall divide our consideration thereof into three categories, the first dealing with liability, the second with procedural aspects, and the third with damages.

## LIABILITY

As may be observed from the above recitation of the trial court's order, the primary question concerning liability relates to defendants' contention, and the trial court's belief, that the decedent, George S. Baxter, was contributorially negligent as a matter of law.

In reviewing this question, we are bound by the oft-cited and quoted rule that we must accept as true that view of the evidence most favorable to plaintiffs, and must bear in mind the admonition first enunciated in *McQuillan v. Seattle*, 10 Wash. 464, 465, 38 Pac. 1119, that:

". . . Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. [citing cases]

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. [citing cases] And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. [citing authorities] If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury. [citing case]"

Defendants, in support of the trial court's conclusion of contributory negligence, rely upon the second classification.

The evidence, reviewed in a light most favorable to plaintiffs, may be summarized as follows: On November 19, 1960, the decedent, George S. Baxter, an appliance dealer in Yakima, climaxed a business trip to the Columbia Basin area by attending an intercollegiate football game in Spokane. On the same date, a group of Rotarian-sponsored Yakima citizens traveled to Spokane upon a chartered Greyhound bus for the purpose of attending the same game.

After the game, the decedent, traveling alone in his 1953 Ford station wagon, and the Rotary group, on the chartered bus, set out for Yakima, both via Moses Lake. By coincidence, both stopped for dinner at Woo's Cafe in Moses Lake. Following dinner, the bus was loaded and resumed the journey to Yakima. The decedent, who had not then finished dinner, departed the cafe sometime later.

As the bus left Moses Lake motor trouble developed, which occasioned the driver to stop and check the fuel supply. Apparently satisfying himself the driver continued on, traveling westward on the cross-state highway to a point, referred to by the parties as Lookout Point, where the highway, as then constructed, turned south and commenced its descent from the Columbia Basin Plateau preparatory to crossing the Columbia River. From Lookout Point, which was about 4 miles from the scene of the accident, the highway descended to a level, straight, north-south stretch of roadway, which paralleled the Columbia River for approximately 2½ miles and then curved southeasterly into a long sweeping reverse curve onto the approach of the old Vantage Bridge over the river.

At Lookout Point, the bus again developed motor trouble and lost power. The driver, instead of turning out and stopping, undertook to keep the bus moving by coasting down the grade and out onto the flat. In the course of this operation, the bus passed several areas where the driver could have stopped and parked off the highway. When the bus reached the southeasterly curve at the end of the straightaway it stopped, the rear of the bus being about 30 feet into

the curve. As the bus then stood, it was at an angle to traffic approaching from the north and 30 feet off a theoretical projection of the straightaway. In this position, a full view of the rear of the bus was not afforded to traffic from the north until such traffic came within 200 feet of the bus. The time was approximately 9:15 p.m.

The paved portion of the highway at the point where the bus stalled was 22 feet in width, with a one-foot shoulder on either side bordered by cabled guardrails. The bus was 8 feet wide, 10 feet high, and 35 feet long, and literally occupied the entire south-bound lane of travel. The speed limit on the highway was 60 miles an hour. Traffic was light to moderate, with vehicles passing at varying intervals. It was dark, the weather was generally clear, visibility was good, and the road was dry.

The driver disembarked, went to the rear of the bus, returned, advised the passengers he was going to Vantage for assistance, flagged a ride with a passing motorist, and left the scene. No warning devices, as required by RCW 46.37-.450,[2] were placed behind or in front of the disabled bus.

[2] "(1) Whenever any motor truck, passenger bus, truck tractor over eighty inches in overall width, trailer, semitrailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in subsection (2):

"(a) A lighted fusee, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.

"(b) As soon thereafter as possible but in any event within the burning period of the fusee (fifteen minutes), the driver shall place three liquid-burning flares (pot torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:

"(i) One, approximately one hundred feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.

"(ii) One, approximately one hundred feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.

"(iii) One at the traffic side of the disabled vehicle not less than ten feet rearward or forward thereof in the direction of the nearest approaching traffic. If a lighted red electric lantern or a red portable

The rear of the bus, however, was equipped with two red reflectors, two clear license-plate lights, and nine red lights (two of which could be made to blink off and on 80 to 90 times a minute).[3] The lights were on and the blinker mechanism actuated when the driver left, and they were on after the accident. The driver testified he set the emergency brake and left the bus in gear.

After the driver departed, and in the 10 to 20 minute interval before the collision, several vehicles passed traveling in both directions; a blinking effect, occasioned by the headlights of vehicles passing over the steel-girdered bridge, and reflecting from or broken by the guardrail posts along the roadway, was noted by some of the bus passengers; one of the passengers moved to the driver's seat, took the bus out of gear, and attempted to start it; a hissing noise comparable to the sound accompanying the release of air brakes was heard by some of the passengers; and another passenger stepped out of the bus, over the adjacent guardrail, and moved toward the rear of the vehicle.

As the passenger outside the bus stood near the rear of the bus, he observed two vehicles approaching the

emergency reflector has been placed at the traffic side of the vehicle in accordance with subdivision (a) of this subsection, it may be used for this purpose.

"(2) Whenever any vehicle referred to in this section is disabled within five hundred feet of a curve, hillcrest or other obstruction to view, the warning signal in that direction shall be so placed as to afford ample warning to other users of the highway, but in no case less than five hundred feet from the disabled vehicle." RCW 46.37.450.

[3]The following is a list of the lights defendants assert illuminated the rear of the bus:

(1) Three red "Michigan Marker" lights centered near the top rear of the bus, about 8 feet off the ground and 3 inches in diameter.

(2) Two red clearance lights, one on each of the upper rear corners of the bus, 3 inches in diameter and about 8 feet above the ground.

(3) Two red turn signals, one on each side of the rear of the bus, about 4 inches in diameter and 5½ feet from the ground. These lights could be made to flash off and on by a switch inside the bus.

(4) Two red tail lights, one on each side of the rear of the bus, about 4 inches in diameter and 4½ feet from the ground.

(5) Two small clear lights illuminating the license plate.

(6) Two red reflectors about 3 inches in diameter, located on the lower rear corners of the bus.

scene, one from the north (the Baxter vehicle) and one from the southeast. He testified that they were an equal distance from the scene, traveling at about the same speed (which he characterized as a normal rate of speed), that they arrived at the bus at the same time, and that the Baxter vehicle, after applying its brakes, ran into the rear of the bus. The passengers on the bus felt the impact and some recalled an oncoming car passing the bus several seconds before impact.

The Baxter vehicle laid down approximately 44 feet of straight skid marks up to the point of impact, which, together with the imprint of headlights on the rear of the bus, indicated the vehicle struck the bus squarely. The force of the impact demolished the front end of the Baxter vehicle, moved the rear-end motor of the bus on its mountings, and rolled the bus forward approximately 74 feet at which point it was brought to a stop by the passenger in the driver's seat applying the brakes.

Upon the basis of the foregoing summary of events, both parties, plaintiffs on appeal and defendants on cross-appeal, assign error to the trial court's disposition of the contributory negligence issue. Plaintiffs challenge the trial court's holding that the decedent was contributorially negligent insofar as such holding served as a ground for granting a new trial, while defendants assign error to the trial court's failure to hold decedent contributorially negligent as a matter of law and dismiss plaintiffs' action.

Plaintiffs, in support of their position, assert the negligence, if any, of Mr. Baxter was a question for the jury, because (a) the failure of the bus driver to set out fusees, flares, lanterns, or reflective devices pursuant to RCW 46.37.450 could well be *the* proximate cause of the accident; (b) the angle at which the bus stood and the adjacent guardrail posts partially obscured its rear lights; (c) the location of the bus (30 feet off a projection of the straight-away) was deceptive; (d) the blinking-light effect created by traffic on the girdered bridge and headlight reflections from the guardrail posts minimized any warning afforded by blinking lights on the bus; (e) road film or dirt on the

rear of the bus diminished the effectiveness of its lights;[4] and (f) the headlights of the oncoming vehicle momentarily blinded Mr. Baxter.

On the other hand, defendants, in support of their contention that decedent was contributorially negligent as a matter of law, assert that (a) the lights upon the rear of the bus constituted a sufficient warning of danger to overtaking traffic, both factually and within the comprehension of RCW 46.37.210(4);[5] (b) the surrounding terrain was of such nature as to render the bus lights visible for at least 2½ miles; and (c) the accident was occasioned by decedent's inattentiveness, excessive speed, and lack of vehicular control.

Both parties in their briefs and the trial court, in its oral decision, debate the merits and applicability of *Kegler v. Hogland Transfer Co.*, 197 Wash. 566, 85 P. (2d) 1051 (1938). The questioned case purports to hold that failure on the part of a disabled vehicle to set out the warning devices required by RCW 46.37.450, invariably renders the question of an overtaking and colliding driver's negligence one of fact to be passed upon by the trier of the facts. The case has not, since its deliverance, been directly cited or relied upon in any majority opinion of this court. Its apparent holding was seriously questioned by three mem-

---

[4]The evidence indicated the bus had traveled from Seattle to Walla Walla, Yakima, Spokane, and to the scene of the accident since last serviced and cleaned.

[5]"Any vehicle may be equipped with lamps which may be used for the purpose of warning the operators of other vehicles of the presence of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing, and when so equipped may display such warning in addition to any other warning signals required by this chapter. The lamps used to display such warning to the front shall be mounted at the same level and as widely spaced laterally as practicable, and shall display simultaneously flashing white or amber lights, or any shade of color between white and amber. The lamps used to display such warning to the rear shall be mounted at the same level and as widely spaced laterally as practicable, and shall show simultaneously flashing amber or red lights, or any shade of color between amber and red. These warning lights shall be visible from a distance of not less than five hundred feet under normal atmospheric conditions at night." RCW 46.37.210(4).

bers of our court in a dissenting opinion in *Davis v. Browne*, 20 Wn. (2d) 219, 147 P. (2d) 263 (1944). In 1955, the legislature passed RCW 46.37.210 (4) authorizing the mounting of warning lamps upon vehicles to be used in addition to other warning devices required by law. If the apparent holding of the case has not been substantially weakened by judicial question and disregard, and its lack of authoritative support, we are satisfied it has been legislatively modified by RCW 46.37.210 (4). We do not rely upon it for our disposition of the instant case.

In the instant case, we are satisfied there is ample evidence which would support a factual finding of contributory negligence on the part of the decedent. However, the basic question to be determined on this appeal is whether, under the surrounding circumstances, the facts compel the conclusion that the decedent was contributorially negligent as a matter of law in failing to timely observe and safely heed the warning lights mounted and operating upon the bus.

In determining this question, we bear in mind that, in this day of heavy and speeding highway traffic, (a) an obscurely lighted or unlighted obstruction upon a roadway at night is extremely hazardous (legislatively recognized by the mandatory requirements of RCW 46.37.450), and (b) red lights, as well as flares, fusees, red lanterns or reflectors, are commonly recognized as signals of danger, and when visibly situated upon a highway dictate driver caution. However,

" . . . It is not the rule that a driver of an automobile must stop his automobile or check his speed every time he sees a red light on the highway at risk of being chargeable with negligence [as a matter of law]. Whether he is so negligent by not so doing, must always depend upon the circumstance. While a red light is a signal of danger, it is also a signal that usually points out the place of danger. If it is at one side of the highway, an approaching driver has the right to assume that it marks the limit of danger, and that the other side of the highway is clear. It is only when the light blocks the highway, or is so placed as to indicate that the passage is so narrowed as not to afford a safe passage within the speed limit, that he is chargeable with negligence [as a matter of law] if he does not approach

with his vehicle under control." *Martin v. Puget Sound Elec. R.*, 136 Wash. 663, 668, 241 Pac. 360.

Against the backdrop of these observations, we are convinced that the angle of the stalled bus and its location in relation to the straightaway, down which decedent was approaching, render the issue of whether he exercised the requisite degree of care under the circumstances a question for the jury. The fact that the evidence is in dispute as to the precise angle and position of the bus, uncertain as to proximate passage of an oncoming vehicle, indicative that other vehicles passed the bus safely, or conflicting as to the rate of speed of the Baxter vehicle does not warrant ignoring the favorable inferences arising from a reasonable interpretation of the evidence supportive of plaintiffs' theory. Under the evidence as presented, plaintiffs were entitled to argue, and the jury apparently accepted their version, that the angle of the bus partially obscured its warning lights, and its position in relation to the straightaway created the impression to overtaking traffic that it was off the highway.

The trial court properly denied defendants' motions for nonsuit, directed verdict, and judgment notwithstanding the verdict. Perforce, the trial court erred in granting a new trial upon the grounds that decedent was contributorially negligent as a matter of law.

### PROCEDURAL ASPECTS

Defendants, in support of the trial court's order granting a new trial, assign as error on their cross-appeal failure of the trial court to give seven proposed instructions. Four of the proposed instructions deal with the principle that a motorist is deemed to have seen that which is there to be seen. *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784. The remaining three propound an omitted portion of the statute governing speed, a portion of RCW 46.37.350[6] re-

---

[6]"Every motor vehicle or combination of vehicles, at all times and under all conditions of loading, shall, upon application of the service or foot brake, be capable of decelerating and developing a breaking force equivalent to such deceleration according to the minimum re-

lating to braking equipment and efficiency, and language[7] qualifying the construction to be placed upon the stopping and parking statute (RCW 46.48.290).

We have carefully examined the proposed instructions and the instructions given by the trial court in the light of the evidence submitted and the theories of the parties finding support in the evidence. We cannot agree that the failure of the trial court to give the proposed instructions constituted prejudicial error warranting a new trial.

The theory of the first four proposed instructions was covered by an instruction given by the trial court. Of the remaining three, the first was not applicable, the second was not supported or justified by the evidence, and the third was and is argumentative. The trial court did not err in rejecting them.

Plaintiffs assign error to the permission granted to defendants to amend their motion for new trial by adding thereto two grounds not included in their original motion. These grounds were that the damages were so excessive as to indicate passion and prejudice, and that there was no evidence or reasonable inference from the evidence to warrant or justify the verdict. Rule of Pleading, Practice and Procedure 59.04W(5) (7), RCW Vol. 0.

---

quirements set forth herein, and also of stopping within the distances set forth herein.

| | "Stopping distance in feet | Deceleration in feet per second per second | Equivalent breaking force in percentage of vehicle or combination weight |
|---|---|---|---|
| "Passenger vehicles, not including busses ...... 25 | | 17 | 53.0% . . ." |

RCW 46.37.350.

[7]"You are instructed that the above statute must be given a reasonable and workable construction. The fact that there [sic] other spots in the vicinity where it was physically possible for the bus to stop off the traveled portion of the highway, does not mean that it was therefore negligence on the part of the bus driver to stop where he did. If you feel the bus driver exercised reasonable care, under all the facts and circumstances here existing in stopping where he did, defendants are not to be held liable." Defendants' proposed instruction No. ......

RCW 4.64.010 prescribes the time within which a motion for new trial must be served and filed following return of a jury verdict. RCW 4.32.250 permits the trial court to enlarge or extend such time if good cause be shown. *Brownlee v. Price*, 49 Wn. (2d) 877, 307 P. (2d) 880. In addition, RCW 4.32.250 authorizes the trial court to correct defects or error in any notice or other paper "in furtherance of justice upon proper terms."

 If, in keeping with the provisions of RCW 4.32.250, the time for serving and filing the original motion for new trial may, upon appropriate showing be enlarged by the trial court, we can conceive of no logical reason why, within the provisions of such statute, a corrective amendment of a timely served and filed motion for new trial may not be granted in furtherance of justice and upon proper terms, the latter including adequate opportunity for the opposing party to meet the amended motion.

In the instant case, the original motion for new trial included the ground that substantial justice had not been done, and the trial court concluded that the additional grounds sought to be interpolated by amendment had been omitted through excusable oversight. The trial court further concluded that justice required a consideration of the additional grounds. Accordingly, the trial court granted the proposed amendments, imposed terms in the form of attorneys' fees and costs against defendants, and proferred a continuance to plaintiffs. Plaintiffs accepted the terms, rejected a continuance beyond the next day, and presented argument in opposition to the motion for new trial as amended.

The trial court did not err in permitting the questioned amendments.

## DAMAGES

For the purposes of this portion of the opinion, it is necessary to set forth additional evidentiary facts, again in a light most favorable to plaintiffs.

On the date of his death, Mr. Baxter was 39 years of age with a life expectancy of 33.07 years. He was the owner of a business located in the Westpark shopping area of

Yakima, known as the "Yakima Kitchen Center," which dealt in the installation of new kitchens and the sale of kitchen appliances. For several years preceding his death, his annual income from the business was in the neighborhood of $5,000 to $6,000. He was buying out a former partner and anticipated a more remunerative future.

Mr. Baxter was married to plaintiff Evelyn Seeley for 15 years. This marriage ended in divorce in May, 1959. During this marriage the couple had two boys and adopted a little girl. At the time of Mr. Baxter's death, the children were 13, 12, and 3. Under the terms of the divorce decree, with a property settlement and custody agreement incorporated, custody of the children was awarded to Mrs. Seeley, and Mr. Baxter was directed to pay $250 per month child support until Mrs. Seeley's remarriage, when the payments were reduced to $150. Reasonable visitation rights with the children were accorded to Mr. Baxter.

The record is replete with evidence that Mr. Baxter remained a devoted father after the divorce, regularly paying the required support payments and giving the children paternal guidance, discipline, recreational advantages, and economic benefits beyond those ordinarily advanced under similar circumstances. He loved his children and they respected him.

The day after his divorce from Mrs. Seeley, Mr. Baxter married plaintiff Roberta Baxter. During the 18-month interval preceding his death, the evidence indicates the marriage was a happy one. He was an attentive and considerate husband, and he and Mrs. Baxter shared many interests, including his visitations with his children. Throughout the period of this marriage, Mrs. Baxter worked in a drugstore as a clerk and was, to a large degree, economically self-sufficient.

As a result of the accident on November 19, 1960, Mr. Baxter sustained a brain concussion, several fractured ribs, internal injuries, a fractured leg, a pneumothorax condition of pressure on the heart, and a flail chest. He was treated in the Quincy hospital and died on November 21, 1960.

During periods of consciousness before his death, he suffered intense pain.

The hospital, medical, and funeral expenses, and the fair market value of the demolished station wagon amounted to approximately $2,400.

The jury returned a verdict in the total sum of $90,876, $48,376 being awarded to the surviving wife, and $42,500 to the minor children. The trial court, in its order granting an unconditional new trial, determined (1) that such award was so excessive as to unmistakably indicate the verdict was the product of passion and prejudice, and (2) that substantial justice had not been done. In support of its respective determinations, the trial court pointed to (a) the amount of the verdict, (b) certain actions of plaintiffs' counsel during the course of the trial, (c) the local prominence and friendliness of the witnesses for plaintiffs, and (d) contributory negligence of the decedent.

Plaintiffs assign error to the trial court's order.

In approaching the issues thus raised, we start with the principle that, except where the order is predicated upon a ruling as to the law, an order granting or denying a new trial is not to be reversed unless it be for an abuse of discretion, and that a much stronger showing of an abuse of discretion will be required to set aside an order granting a new trial than one denying it. *Johnson v. Howard*, 45 Wn. (2d) 433, 275 P. (2d) 736; *Nelson v. Martinson*, 52 Wn. (2d) 684, 328 P. (2d) 703.

The reason for the foregoing principle is quite patent. The granting of a new trial places the parties where they were before, while a denial of a new trial concludes their rights. The trial judge, by virtue of his favored position, should be accorded room for the exercise of sound discretion. He sees and hears the witnesses, the jurors, the parties, counsel, and any bystanders. He can evaluate first hand candor, sincerity, demeanor, intelligence, and any surrounding incidents; whereas, the reviewing court is tied to the written record. *State v. Taylor*, 60 Wn. (2d) 32, 371 P. (2d) 617; *Commonwealth v. Metcalfe*, 184 Ky. 540, 212 S. W. 434; 37 Wash. L. Rev. 367.

■ On the other hand, it should not be forgotten that the determination of the amount of damages, particularly in actions of this nature, is primarily and peculiarly within the province of the jury, under proper instructions, and that courts should be and are reluctant to interfere with the conclusion of a jury, when fairly made. *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223; *Anderson v. Dalton*, 40 Wn. (2d) 894, 246 P. (2d) 853, 35 A.L.R. (2d) 302; *Martin v. Foss Launch & Tug Co.*, 59 Wn. (2d) 302, 367 P. (2d) 981. Furthermore, courts are aware, and should take cognizance of the fact, that the purchasing power of money changes from time to time, and that jurors are no doubt conscious of this phenomenon. *Kellerher v. Porter, supra.*

■ Turning then to a review of the trial court's order, the first factor asserted in support thereof is that the amount of the verdict is so extravagant as to unmistakably point to passion and prejudice. We can agree that the verdict is large; however, we cannot agree that it so exceeds any rational estimate or plausible explanation of the damages sustained by the plaintiffs as to unerringly point to passion and prejudice. The jury, as it was instructed to do, was evaluating the pecuniary loss, coupled with the loss of companionship, care, society, guidance, and protection, occasioned by the death of a father and husband. The decedent was in the prime and productive years of his life. He was operating a business, as a sole proprietor, which had for the several preceding years, under partnership guidance, produced a respectable gross and net income. With his death the business failed. The jury could have believed, under the evidence presented, the business would have prospered but for his death. His children loved him and looked to him for guidance and companionship, and he reciprocated. His second marriage, though of short duration, was apparently a happy one. He suffered intense pain from the injuries occasioning his death.

We cannot say the jury arrived at its verdict without appropriate regard for the facts before it or the instructions given by the court, which included an admonition against sympathy and prejudice.

The second factor relied upon in support of the order granting a new trial consists of certain actions and statements attributed to plaintiffs' counsel during the course of the trial. It is contended such created the impression that defendants were withholding evidence and that plaintiffs were eminently fair, thereby engendering passion, prejudice, and sympathy in the minds of the jurors. The particular incidents referred to are (a) an oral demand by plaintiffs' counsel upon defendants' counsel to produce certain records, (b) a retrieval, by plaintiffs' counsel, of illustrative written calculations made by a defense witness which had been cast into the waste basket by defense counsel, and (c) a statement by plaintiffs' counsel whereby the jury was informed that plaintiffs had reduced their claim for damages. Defendants did not interpose appropriate objections or motions at the time of the incidents, and proposed only a stock instruction concerning statements of counsel, which was covered, in substance, by the trial court's instructions.

Our examination of the record, in the light of the energetic trial advocacy of both sides, does not convincingly indicate that the incidents were so one-sided, persistent, or ill-intentioned as to justify their resurrection after the verdict. *Nelson v. Martinson, supra.*

The third factor advanced as a basis for the assertion of passion and prejudice is the local prominence and friendliness of the bus-passenger witnesses called by plaintiffs. It is stated, in the trial court's order, that their acquaintanceship with the plaintiffs and seeming aquaintanceship with some members of the jury influenced the jury. At the outset, it should be noted that fate, not plaintiffs, elected these witnesses. As stated by the trial court in its oral decision, it is doubtful that a change of venue would have been granted had one been requested prior to trial. It is possible that some of them would have been called as witnesses by the defendants had they not been presented by plaintiffs, for their testimony would appear to be more favorable to defendants than to plaintiffs upon the issue of contributory negligence. None of them testified directly upon the issue

of damages, beyond relating their observations of the decedent at the scene of the collision. The parties were each represented by local counsel, as well as out-of-county counsel. A review of the voir dire examination of the jurors fails to reveal any evidence of undue acquaintanceship. No challenges for cause were interposed upon this ground. The trial court gave the usual admonitions to the jurors regarding their conduct during recesses and during their deliberations. Neither the trial court's order nor oral decision points to any non-record occurrences demonstrative of undue friendship, and the testimony of the witnesses, as it appears in the record, impresses us as being straightforward and unembellished.

In evaluating this factor and the previously discussed factors, separately and cumulatively, we are constrained to disagree with the trial court. We cannot, in good conscience, find that the factors alluded to demonstrate the jury's integrity and judgment was unmistakably overcome by passion and prejudice.

The second ground upon which the trial court granted an unconditional new trial was based upon its belief that substantial justice had not been done. In arriving at this determination, the trial court made reference to the factors just discussed and, in addition, to its conviction that the decedent was contributorially negligent. The court thus concluded that the verdict of the jury was contrary to the weight of the evidence.

The basic question posed by an order granting a new trial upon this ground, be it a civil or criminal action, is whether the losing party received a fair trial. *State v. Taylor, supra.* And, it is in this area of the new-trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.

If the trial judge, in the exercise of his best judgment determines that a fair trial has not been had, he has the

alternative, in an appropriate situation, of granting a partial, a conditional, or an unconditional new trial. This decision, in turn, calls for a weighing of factors and values such as the complexity of the issues, the length of the trial, the degree and nature of the prejudicial incidents, the nature and amount of the verdict, the cost of retrial, the probable results, the desirability of concluding litigation, and such other circumstances as may be apropos to the particular situation.

In the instant case, we are convinced that the issue of decedent's contributory negligence presented a jury question, that the parties were energetically and competently represented, that the jury was properly instructed, and that the parties received a fair trial upon the question of liability. The fact that the trial judge believed, from his weighing of the testimony, that decedent was contributorially negligent is not controlling.

We are likewise convinced that passion and prejudice did not infect the verdict, either as to liability or damages.

We are not satisfied, however, that our evaluation of the factors alluded to by the trial court, for the purpose of determining whether passion and prejudice were present, fully answers the question of whether substantial justice has been accorded to defendants upon the issue of damages. In this area it is impossible for us to gauge the impact of the appearance and attitude of the witnesses, the atmosphere prevailing in the court room, the conduct or statements of counsel, and the responsiveness of the jurors. We must, to a great extent, be guided by the evidence, the reactions of the trial judge, as recorded in his oral decision and order, and a tipping of the balance between the factor of the latitude afforded the jury and the factor of our conscience. *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn. (2d) 386, 261 P. (2d) 692; *Malstrom v. Kalland*, 62 Wn. (2d) 732, 384 P. (2d) 613.

Bearing in mind the guidelines heretofore mentioned, and without further recitation of the evidence or the reasons assigned by the trial court, we conclude that the award of damages to the minor children, while large, is not, under all

of the circumstances, excessive. We are persuaded, however, that the award granted to the surviving spouse, taking into consideration the shortness of the marriage and her self-sufficiency, is excessive. To permit it to stand would, in our opinion, constitute an unjust imposition upon defendants, although we do not consider it so flagrant and outrageous as to warrant an unconditional new trial.

It is our opinion that a reduction of $13,000 in the amount of the award to the surviving spouse would be fair to both parties.

Accordingly, the order granting new trial is modified to provide for a new trial upon all issues unless plaintiffs, within 20 days after the remittitur has gone down from this court, accept the reduction. Neither party shall recover costs on this appeal.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.