[No. 18538-9-III. Division Three. December 14, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. MARCELINO J. RODRIGUEZ, *Appellant*.

*William D. Edelblute*, for appellant.

*James L. Nagle, Prosecuting Attorney*, and *Gabriel E. Acosta, Deputy*, for respondent.

BROWN, J. — A jury found Marcelino Rodriguez guilty of two counts of delivering cocaine to a confidential informant (CI). A prosecution witness, garbed in a jail uniform and shackled, testified he sold cocaine to Mr. Rodriguez that was later sold to the CI. Mr. Rodriguez unsuccessfully

moved for a mistrial based upon the witness's shackling and dress. Mr. Rodriquez argues on appeal that (1) the trial court erred in denying his mistrial motion, (2) his trial attorney was ineffective, and (3) the prosecutor's examination of a witness was misconduct. We affirm.

## FACTS

Marcelino Rodriguez was convicted of two counts of delivery of a controlled substance, cocaine. The convictions arose out of two controlled buys, in which a paid police informant, Arturo Suarez, contacted Mr. Rodriguez and purchased cocaine.

Mr. Suarez testified that on March 19, 1999, he was searched by officers and then given money to buy the drugs. He went to Mr. Rodriguez's apartment where he met Mr. Rodriguez. Mr. Rodriguez told Mr. Suarez to leave the money and return in a few minutes; he further told Mr. Suarez that his connection had not yet arrived. When Mr. Suarez returned, Mr. Rodriguez handed him "an eight-ball of Coke underneath the table." Mr. Suarez returned to the police officers and was searched again.

Mr. Suarez testified that a few days later, he called Mr. Rodriguez at a tavern and told him he wanted to buy more cocaine. Mr. Rodriguez agreed to meet with him. Mr. Suarez contacted police, was searched, and was given money. When Mr. Suarez arrived at the bar, Mr. Rodriguez said he had sold the last of the drugs and they needed to go pick up more. Mr. Suarez accompanied Mr. Rodriguez to a Safeway parking lot where Mr. Rodriguez left the car alone. When Mr. Rodriguez reappeared he gave Mr. Suarez the drugs. Mr. Suarez was picked up by an officer and searched.

Detective Ascension Castillo corroborated Mr. Suarez's testimony. He said Mr. Suarez was searched, provided with prerecorded bills to make the purchase, and observed during the first purchase. Detective Castillo testified that while Mr. Suarez was purchasing drugs on the first occasion, a small white car pulled up to the apartment and the

occupant delivered drugs. The detective later discovered the individual driving the car was Arnulfo Ojeda. A search of Mr. Ojeda's residence yielded two of the prerecorded bills given to Mr. Suarez to purchase drugs from Mr. Rodriguez.

Officer Mike Ralston corroborated Mr. Suarez's testimony about the first drug purchase. Reserve police officer Doug Nelson and Detective Sergeant D.A. Lindemann corroborated the testimony about the second drug purchase. Officer Nelson and Detective Castillo differed about who searched the CI after the second buy. When Officer Nelson was examined by the State, counsel asked without objection: "So if Officer Castillo testified that you did it, that would be a mistake on his part?"

Mr. Ojeda testified for the State saying that he sold cocaine to Mr. Rodriguez:

Q. Have you been charged with having delivered drugs to Mr. Marcelino Rodriguez?

A. Yes.

Q. And you have pled guilty?

A. Yes, I plead guilty for my deportation.

After Mr. Ojeda's testimony, Mr. Rodriguez unsuccessfully moved for a mistrial, arguing that Mr. Ojeda was brought into court in a jail uniform, handcuffed, and shackled, making him more credible to the jury.

## ANALYSIS

### A. Witness Shackling

The issue here is not whether Mr. Ojeda should, or should not, have been permitted to testify in shackles. Nor is it what prejudice, if any, resulted. The question is who should make those decisions—the trial judge in the courtroom, or a panel of appellate judges in Spokane.

■■ The standard of review is whether no reasonable judge would have made this decision. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). Generally, a trial

court should grant a mistrial motion when prejudice exists to an extent that nothing short of a new trial would ensure a fair trial. *Id.* An error is prejudicial in this sense if it affects the outcome of the trial. *Id.*

When denying the mistrial motion the trial court reasoned that Mr. Rodriguez's context was reversed. "Normally people object to that because they say it gives them a bad image and people won't believe them or have less credibility." The court suggested the State should have made the motion, not Mr. Rodriguez. The court rejected the concept that the appearance of a shackled State witness would cause prejudice to Mr. Rodriguez. The court offered Mr. Rodriguez the opportunity to provide authority and renew the motion posttrial. However, the record is silent whether that occurred.

 ██ When a jury views a shackled *defendant*, that person's constitutional right to a fair and impartial trial is impaired. *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999). This is because restraints "may abridge important constitutional rights, including the presumption of innocence . . . ." *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981). "Slightly different" interests are implicated when a witness is shackled. *Id.* at 399. "While a shackled witness may not directly affect the presumption of innocence, it seems plain that there may be some inherent prejudice to defendant, as the jury may doubt the witness' credibility." *Id.* However, the context of the *Hartzog* case was loss of defense witness credibility and resulting prejudice to the defendant. As the trial court suggested, in that context, the *Hartzog* court concluded restraints for witnesses should be imposed "only in compelling circumstances, which the trial judge should explain on the record." *Id.*

Traditionally, the shackling of witness analysis has been applied to defense witnesses. *See, e.g., Kennedy v. Cardwell*, 487 F.2d 101, 105 (6th Cir. 1973); *Hartzog*, 96 Wn.2d at 399. Here, the theory is advanced without authority that a State's witness's appearance in shackles may prejudice the

defendant. Mr. Rodriguez moved for a mistrial after Mr. Ojeda's testimony. He argued that the appearance in shackles and prison clothing was designed to make Mr. Ojeda's testimony *more* believable.

Our situation is not materially distinguishable from *United States v. Brooks*, 125 F.3d 484 (7th Cir. 1997). There, a witness appeared under a cloak of immunity and testified about her role in the crime before the court, thus clearly implicating her complicity as a principal or accomplice. Here, Mr. Ojeda's testimony was clear that he pleaded guilty to delivering drugs to Mr. Rodriguez, not that he participated with Mr. Rodriguez in the crimes before the court as a principal or accomplice. Thus, as in *Brooks*, Mr. Ojeda's jail clothing and shackling was explained to the jury by his conviction for disparate crimes.

Significantly, under *Hartzog*, 96 Wn.2d at 399, the appearance of a shackled witness other than the defendant implicates not the defendant's presumption of innocence, but purely witness credibility. Here, the witness was adverse to the defendant. Thus, any credibility impairment would have been adverse to the State, not Mr. Rodriguez. Therefore, no prejudice can be shown.

Additionally, this is not a case implicating freedom of association under the First Amendment. Citizens may not lawfully associate to conduct criminal enterprise. And association evidence is admissible if relevant to an issue in a case. *State v. Campbell*, 78 Wn. App. 813, 822, 901 P.2d 1050, *review denied*, 128 Wn.2d 1004 (1995). Mr. Ojeda was simply a fact witness connecting the marked money back to Mr. Rodriguez. The evidence was admissible because it was relevant to Mr. Rodriguez's deliveries to the CI. Mr. Ojeda did not express an opinion as to Mr. Rodriguez's guilt nor in any way did Mr. Ojeda implicate himself in Mr. Rodriguez's crimes.

■ Further, the policy considerations that underlie *Hartzog* cut against a rule requiring a *Hartzog* hearing for witnesses testifying on behalf of the State. The assumption (unproven, but logical) is that a witness or a defendant's

credibility is undermined when that witness or the defendant is required to appear shackled or in prison garb. If that is true, the appearance of prosecution witnesses in prison garb would tend to undermine that witness's credibility and, necessarily, the strength of the prosecution's case—something the defendant is trying to accomplish. As previously discussed, some courts have held that the rationale disfavoring jurors seeing a defendant in handcuffs applies equally to cases involving jurors seeing a witness in handcuffs. *See, e.g., State v. Shelton*, 779 S.W.2d 614, 616 (Mo. Ct. App. 1989) (defense witness). However, these holdings all focus on the appearance of witnesses testifying *on behalf of the defendant* and the resulting prejudice.

■ Even still, we agree that the use of shackles in the courtroom is "an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). On that basis alone, the use of physical restraints should be and is disfavored. *Allen*, 397 U.S. at 344; *Duckett v. Godinez*, 67 F.3d 734, 747 (9th Cir. 1995). Restraints may impede the prisoner's ability to communicate. *Allen*, 397 U.S. at 344. They may also "confuse and embarrass the [witness], thereby impairing his mental faculties; and they may cause him pain." *Duckett*, 67 F.3d at 748. For these reasons, unnecessary public shackling of prisoners is to be avoided. But again, these are decisions properly left to the judge at the scene.

The trial judge was not required to conduct a *Hartzog* hearing before the State called its own witness in prison uniform and shackles. And the trial judge did not abuse his discretion by denying Mr. Rodriguez's motion for mistrial.

Moreover, evaluating the likely influence of shackling or prison garb on a jury is difficult at best even for a trial judge who sits and watches the jury as the witness testifies; we have merely the written record. *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 437, 397 P.2d 857 (1964). We cannot gauge the effect on the jury of such subtle influences as the demeanor or the appearance of a witness. We are "handi-

capped in any effort to rule on such 'subtle evidentiary questions outside a factual context.' " *State v. White*, 43 Wn. App. 580, 583-84, 718 P.2d 841 (1986) (quoting *Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)). It is impossible for us to gauge the impact of the appearance of the witnesses, the atmosphere prevailing in the courtroom, or the responsiveness of the jurors. *Greyhound*, 65 Wn.2d at 441; Dennis J. Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 GONZ. L. REV. 277, 279 (1995-96).

In sum, we conclude the trial court did not err when denying Mr. Rodriguez's motion for mistrial based upon the appearance of a shackled State witness. Although under the cited "no reasonable judge" standard of review we agree that no error occurred, we note that this trial judge specified tenable reasons and grounds supporting his decision to deny Mr. Rodriguez's motion for mistrial. *See State v. Scott*, 72 Wn. App. 207, 230, 866 P.2d 1258 (1993) (Forrest, J., dissenting), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995).

## B. Ineffective Assistance of Counsel

■ Mr. Rodriguez contends he received ineffective assistance of counsel because his attorney failed to object to certain testimony. To establish ineffective assistance of counsel, the defendant must meet a two-pronged test: defendant must show (1) that counsel's performance fell below an objective standard of performance, and (2) that the ineffective performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In evaluating whether a defendant meets the first prong of the test, the court determines the quality of counsel's representation by reference to "an objective standard of reasonableness based on consideration of all of the circumstances." *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Appellate review of counsel's performance is highly deferential and there is a

strong presumption that the performance was reasonable. *State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990).

■ To meet the second prong of the test, the defendant must show that "but for the ineffective assistance, there is a reasonable probability that the outcome would have been different." *Bowerman*, 115 Wn.2d at 808. In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A reviewing court is not required to address both prongs of the test if the defendant makes an insufficient showing on either prong. *Thomas*, 109 Wn.2d at 226. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

First, Mr. Rodriguez claims his counsel was ineffective because he failed to object to testimony from Mr. Suarez that he made arrangements over the telephone to purchase drugs from Mr. Rodriguez. Mr. Rodriguez essentially contends that the call was not properly authenticated and therefore inadmissible. Telephone communications, once authenticated, may be shown in the same manner and with like effect as face-to-face conversations between individuals. *State v. Deaver*, 6 Wn. App. 216, 219, 491 P.2d 1363 (1971).

The evidentiary rule of authentication is a specialized rule of relevance: it is a logical condition of admissibility, in that the proffered item is identified with one of the parties in some manner so as to have significance to the action. 5 JACK WEINSTEIN & MARGARET BERGER, WEINSTEIN'S EVIDENCE § 901(a)[01] (1991).

The requirement of authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. ER 901(a). In the case of telephone calls, identification of the parties to the call is normally required. The identity of a party may be established by direct or circumstantial evidence. *State v. Danielson*, 37 Wn. App. 469, 472, 681 P.2d 260 (1984). The

court should admit the evidence if there is sufficient proof to permit a reasonable juror to find in favor of authentication, or identification. *See* comment to section (a) of Evidence Rule 901; 5 J. WEINSTEIN, EVIDENCE, § 901(a)[01] (1975).

In this case, the telephone call was not critical to the conviction. Rather, the call was merely the first step toward purchase of the drugs. The critical information was that later Mr. Suarez purchased the drugs from Mr. Rodriguez. Even if the court had ruled the call inadmissible, Mr. Suarez still would have provided the evidence that convicted Mr. Rodriguez—he purchased drugs from Mr. Rodriguez. As such, the failure of Mr. Rodriguez's attorney to object to the admission of the telephone call information without authentication did not prejudice him, and, therefore, the failure to object was not ineffective assistance.

Secondly, Mr. Rodriguez contends that his counsel's failure to object to the hearsay testimony of Detective Castillo, in which he asserted the other officers reported that Mr. Rodriguez entered the maroon van at the scene. Mr. Rodriguez claims that if an objection had been made, no other witness could place him at the crime scene other than Mr. Suarez. Mr. Rodriguez is correct because Detective Mike Moses did not testify; no other officers could place him at the scene. However, as the State points out, Mr. Rodriguez testified that he was at his apartment in the Whitman annex with his girl friend on the day of the drug purchase. As such, the admission of the hearsay testimony from Detective Castillo was not prejudicial and was not ineffective assistance of counsel.

## C. Alleged Prosecutor Misconduct

■ The issue is whether the prosecutor committed misconduct by asking Officer Nelson to express an opinion on whether Detective Castillo was mistaken about who searched Mr. Rodriguez following arrest. A defendant who alleges prosecutorial misconduct bears the burden of establishing that the prosecutor's comments are improper and, if

so, that there was a substantial likelihood the comments affected the verdict. *State v. Echevarria*, 71 Wn. App. 595, 597, 860 P.2d 420 (1993).

The State concedes the prosecutor committed misconduct. However, it argues the question was harmless. When the issue arose, Detective Castillo was testifying about the second incident in which the CI made a drug purchase. He said Officer Nelson searched the CI to ensure that he did not have any unaccounted monies or drugs in his pockets. The informant was then handed prerecorded bills to use in buying the drugs. Officer Nelson also testified about the drug purchase. In his testimony, he stated that Detective Castillo was mistaken, and that he did not search the informant.

Mr. Rodriguez fails to show that a substantial likelihood exists that this questioning affected the verdict.

Affirmed.

SWEENEY, J., concurs.

KURTZ, C.J. (concurring) — Because we vest our courts with great power over our persons and property, we hold the participants—judges, lawyers, jurors and witnesses—to high standards of conduct and appearance. Our reason for doing so is self-serving. By attaching solemnity to the court and its processes, we seek respect for its acts. Here, the State offered a witness who was shackled and dressed in what Marcelino Rodriguez's lawyer described for the record as "[a] traditional jail uniform with stripes across it, [a] cartoon character of what a prison uniform looks like[.]" While the majority quotes with approval words that describe such an event as "an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold[,]"[1] the majority's reasoning and holding sanction it.

At trial, the State did not justify Arnulfo Ojeda's appearance with explanations that he posed a danger to the

---

[1] *Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

community or a risk of flight. Rather, the State offered no explanations for Mr. Ojeda's appearance, apparently assuming it was appropriate to offer the testimony of a shackled prosecution witness dressed in a jail uniform. On appeal, the State continues to maintain this position. According to the State, the issue raised by Mr. Ojeda's appearance is limited to witness credibility. The State contends that if a shackled witness testifies for the defense, the witness may prejudice the defense. But if the shackled witness testifies for the State, the defendant cannot be prejudiced because only the State is harmed by that witness's lack of credibility.

The majority states that the issue is not whether the trial court should have permitted the witness to testify in shackles and a prison uniform, or even whether the witness's appearance prejudiced Mr. Rodriguez. For the majority, the issue reduces itself to a single rhetorical question—whether the decision should have been made by "the trial judge in the courtroom, or a panel of appellate judges in Spokane." Majority at 696.

The trial court denied Mr. Rodriguez's motion for a mistrial based upon its understanding that only the State could be prejudiced by the testimony of a shackled prosecution witness dressed in a jail uniform. We review an order denying a mistrial for abuse of discretion. *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992). However, if the court's reasons are based on issues of law, no element of discretion is involved and we review for error of law. *Lyster v. Metzger*, 68 Wn.2d 216, 226, 412 P.2d 340 (1966).

The correct focus is not on whether the witness testified for the defense or the prosecution, but on whether the witness's appearance in shackles and a jail uniform denied Mr. Rodriguez a fair trial. This position was recognized in *United States v. Brooks*, 125 F.3d 484 (7th Cir. 1997). In *Brooks*, the defendant moved for a mistrial because the government's witness appeared in prison clothing and testified with immunity that she had accompanied the two

defendants while they robbed a bank. The defendants contended that the jury could have inferred that they were guilty of the same crimes for which the witness had been convicted. *Id.* at 498. Upon taking the stand, the witness immediately testified that she had been convicted of two crimes and was currently in prison. The *Brooks* court found "[t]he jury's immediate awareness of the fact that she was an inmate dispelled the possible prejudice that the prison attire might have created." *Id.* at 499. The court noted that the witness "was not asked to relate her convictions to the defendants in any way, and she did not do so." *Id.*

Unlike the witness in *Brooks*, Mr. Ojeda related the crimes for which he was convicted to Mr. Rodriguez. He testified that he supplied cocaine to Mr. Rodriguez after Mr. Rodriguez came to him and informed him that he needed cocaine for the sale to the man later identified as a police informant. He testified that it was this criminal conduct for which he was incarcerated. The jury could easily believe that the State had already obtained one conviction and caught one dealer, and now it was proceeding against his customers. In effect, Mr. Ojeda's appearance may have established guilt by association in the jury's collective mind. Although Mr. Ojeda testified for the State, his appearance could have affected Mr. Rodriguez's right to a fair trial. In such a case, the trial court should hold a *Hartzog*[2] hearing before allowing a witness to testify in shackles and in a jail uniform.

Nevertheless, I agree with the majority that Mr. Rodriguez's conviction should be affirmed. There was overwhelming evidence that he twice sold cocaine to a confidential informant. A jury would have convicted him even if Mr. Ojeda had not testified in shackles and a jail uniform. The trial court's denial of a motion for a mistrial will be overturned only when there is a "substantial likelihood" the prejudice affected the jury's verdict. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994); *see also State v.*

[2] *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981).

*Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999). Absent the circumstances recognized in *Brooks* and present in Mr. Rodriguez's case, I agree with the majority that a *Hartzog* hearing is not ordinarily required when the State offers a prosecution witness who is shackled and dressed in a jail uniform. I would hold, however, that before the State could present such a witness, the State should be required to explain the need and ask the court's permission.

Review denied at 143 Wn.2d 1021 (2001).