[No. 56461-7-I. Division One. January 2, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY LAMONT WILLIAMS III, *Appellant*.

---

[10] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

[11] 156 Wn.2d 795, 132 P.3d 714 (2006).

488

Nancy P. Collins (of Washington Appellate Project), for appellant.

Norm Maleng, Prosecuting Attorney, and Catherine M. McDowall, Deputy, for respondent.

¶1 DWYER, J. — Following a jury trial in King County Superior Court, Anthony Williams was convicted of burglary in the first degree. Williams appeals from the judgment entered on the verdict, contending that the trial court erred by admitting into evidence the recording of a 911 call by a nontestifying witness; incorrectly instructing the jury as to the elements of accomplice liability; and not instructing the jury that in order to find Williams guilty of the charged crime, it must unanimously agree as to which of two alleged victims he assaulted. Because we agree that the trial court erred, both by incorrectly instructing the jury as to the elements of accomplice liability and by not instructing on the need for jury unanimity, we reverse the conviction and remand for a new trial.

## FACTS

¶2 On December 20, 2004, a group of men kicked down the door and entered Makeba Otis' apartment while Otis and her boyfriend, Leslie Johnson, were inside.

¶3 On February 11, 2005, the State filed an information charging Williams with burglary in the first degree in connection with that incident. The information alleged that, in the course of the burglary, Williams assaulted "a person, to wit: Makeba Otis and Leslie Johnson."

¶4 Johnson testified that Williams was one of the men involved in the incident and was, in fact, the man who kicked down the door to the apartment.

¶5 Over Williams' objection, a compact disc (CD) recording of a 911 call made by Makeba Otis on the evening of the incident was admitted into evidence and played to the jury. Information regarding how the recording was made was printed on a label affixed to the front of the CD.[1] Otis did not testify at Williams' trial and, therefore, was not present to authenticate the recording or to submit to cross-examination.[2]

¶6 The court's instructions to the jury included an instruction regarding accomplice liability, which provided in relevant part:

> A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of *the crime*, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit *the crime*; or
>
> (2) aids or agrees to aid another person in planning or committing *a crime*.

Instruction 9 (emphasis added).

---

[1] The label affixed to the front of the CD states, "This CD was prepared on 12-29-04 by Gene Lawson of the Seattle Police Department's Communications Section. The audio on the CD has been transferred from the sections' master recording . . . ."

[2] Otis was brought into court pursuant to a material witness warrant but adamantly refused to testify. In response to questioning by the trial court in the absence of the jury, Otis acknowledged that she called 911 on the night of the alleged burglary. The prosecuting attorney chose not to ask the court to hold Otis in contempt for refusing to testify before the jury, and Otis was released.

¶7 The trial court's instructions to the jury also included an instruction regarding the assault element of first degree burglary, which provided in relevant part:

> To convict the defendant of the crime of burglary in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> . . . .
>
> (3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged assaulted *a person*.

Instruction 13 (emphasis added). The trial court did not instruct the jury that it must unanimously agree either that Williams assaulted Johnson or that Williams assaulted Otis in order to find Williams guilty of burglary in the first degree.

¶8 By unanimous verdict, the jury found Williams guilty of burglary in the first degree. The trial court imposed a sentence within the standard sentencing range. This appeal followed.

## *DISCUSSION*

### I. *Accomplice Liability Jury Instruction*

¶9 Williams first contends that the court's instructions to the jury incorrectly defined the elements of accomplice liability, thereby impermissibly relieving the State of its burden of proving beyond a reasonable doubt that Williams' actions satisfied all of the essential elements of the charged crime.[3] We agree.

¶10 "It is a fundamental precept of criminal law that the prosecution must prove every element of the crime

---

[3] Failure to define every element of a charged offense is an error of constitutional magnitude that may be raised for the first time on appeal. *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). Alleged errors in a trial court's jury instructions are reviewed de novo. *State v. Porter*, 150 Wn.2d 732, 735, 82 P.3d 234 (2004).

charged beyond a reasonable doubt." *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). Accordingly, a trial court errs by failing to accurately instruct the jury as to each element of a charged crime if an instruction relieves the State of its burden of proving every essential element of the crime beyond a reasonable doubt. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997); *State v. Stewart*, 35 Wn. App. 552, 554-55, 667 P.2d 1139 (1983). Such an error is harmless only if it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Brown*, 147 Wn.2d at 341.

■■ ¶11 In this case, the court's instruction on accomplice liability did not accurately instruct the jury as to each element of accomplice liability. Washington's accomplice liability statute provides:

> A person is an accomplice of another person in the commission of a crime if:
>
> (a) With knowledge that it will promote or facilitate the commission of *the crime*, he
>
> (i) solicits, commands, encourages, or requests such other person to commit *it*; or
>
> (ii) aids or agrees to aid such other person in planning or committing *it*.

RCW 9A.08.020(3) (emphasis added). The court's instruction defining accomplice liability in this case reads:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of *the crime*, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit *the crime*; or
>
> (2) aids or agrees to aid another person in planning or committing *a crime*.

Instruction 9 (emphasis added).

¶12 Subsection (2) of the jury instruction refers to "a" crime instead of "the" crime, thereby departing from the language of RCW 9A.08.020(3). The statute provides that a

defendant may be found guilty as an accomplice when the defendant, with knowledge that it will promote or facilitate the commission of the crime charged, aids or agrees to aid another person in planning or committing *the specific crime charged*. In contrast, the jury instruction at issue here allowed the jury to find Williams guilty as an accomplice if, with knowledge that it would promote or facilitate the charged crime, he aided or agreed to aid another person in planning or committing *any* crime. Thus, the instruction stated the legal standard incorrectly and more broadly than provided in RCW 9A.08.020(3). The instruction thereby relieved the State of the burden of proving beyond a reasonable doubt this element of the charged crime. *Smith*, 131 Wn.2d at 263.

¶13 The State argues that the instruction was nevertheless acceptable because it did not relieve the State of the burden of showing that Williams acted with *knowledge* that his actions would facilitate the specific crime charged. This argument is unavailing.

¶14 As the Washington Supreme Court held in *Brown*, 147 Wn.2d at 338, *State v. Cronin*, 142 Wn.2d 568, 579-80, 14 P.3d 752 (2000), and *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000), a trial court errs if it proffers a jury instruction that misstates the knowledge element of accomplice liability. In *Brown*, the jury instruction in question provided:

> "A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of *a crime*, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit *the crime*; or
>
> (2) aids or agrees to aid another person in planning or committing *a crime*."

*Brown*, 147 Wn.2d at 337-38 (emphasis added) (quoting Clerk's Papers at 106 (Brown), 144 (Harris), 86 (Baker)). The jury instruction in *Cronin* was identical in all critical

respects.[4] In both *Brown* and *Cronin*, the court found the instruction inadequate because it allowed a defendant to be found guilty as an accomplice when the defendant acted with knowledge that his or her actions would promote or facilitate the commission of *any* crime, rather than *the* crime charged. *Brown*, 147 Wn.2d at 338; *Cronin*, 142 Wn.2d at 579.

¶15 It is true that the error in the instruction in this case was not identical to the error in the instructions at issue in *Brown* and *Cronin*. Nonetheless, the instruction in this case failed to accurately define each element of accomplice liability. That failure impermissibly relieved the State of its burden of accurately establishing every essential element of the charged crime beyond a reasonable doubt. *Smith*, 131 Wn.2d at 263. This was also the underlying problem with the instructions at issue in *Brown* and *Cronin*. *Brown*, 147 Wn.2d at 339; *Cronin*, 142 Wn.2d at 579-80. Accordingly, the trial court incorrectly instructed the jury on the elements of accomplice liability.

¶16 The State next argues that any such error in the accomplice liability instruction was harmless because the evidence establishes that Williams acted as a principal rather than as an accomplice. We disagree. While there is evidence that Williams was the individual who initially kicked down the apartment door, only sparse evidence was admitted tending to show that Williams acted as a principal in either of the alleged assaults. Accordingly, the jury might reasonably have concluded that Johnson was guilty as an accomplice, rather than as a principal, and relied on the flawed instruction in doing so. Thus, the error was not harmless. *See Brown*, 147 Wn.2d at 341 (misstating element of crime in jury instruction harmless only if it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained).

---

[4] The instruction in *Cronin* omitted the "or she" in the first paragraph and "planning or" in the last paragraph. *Cronin*, 142 Wn.2d at 576-77.

¶17 The error in incorrectly defining the elements of accomplice liability in the court's instruction to the jury requires remand for a new trial.

## II. *Absence of Necessary Jury Unanimity Instruction*

¶18 Williams next contends that the trial court erred by failing to instruct the jury that in order to convict Williams of the charged crime, it must unanimously find either that Williams assaulted Otis or that Williams assaulted Johnson. We agree.

■ ■ ¶19 A defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). When the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the crime. *State v. Noltie*, 116 Wn.2d 831, 842, 809 P.2d 190 (1991); *Petrich*, 101 Wn.2d at 572. In such a case, the State may elect the act upon which it will rely for conviction. If the State does not do so, a jury instruction must be given to ensure the jury's understanding that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Petrich*, 101 Wn.2d at 572.

■ ¶20 When a trial court does not properly instruct on unanimity, the error is harmless only if no rational trier of fact could have entertained a reasonable doubt that each act sufficient to constitute the crime charged was proved beyond a reasonable doubt. *State v. Kitchen*, 110 Wn.2d 403, 406, 756 P.2d 105 (1988).

■ ¶21 In order to prove Williams guilty of burglary in the first degree, the State was required to prove that he or another participant in the crime was armed with a deadly weapon or assaulted any person. RCW 9A.52.020. In this case, two distinct criminal acts were alleged: the assault against Johnson and the assault against Otis. Either criminal act was sufficient to satisfy the assault element of first

degree burglary. The court's instructions did not inform the jury that in order to find Williams guilty of burglary in the first degree, it must unanimously find that Williams assaulted Otis or unanimously find that Williams assaulted Johnson.

¶22 The State first contends that it elected to rely on the assault against Johnson rather than on the assault against Otis and, therefore, no unanimity instruction was required. *See Petrich*, 101 Wn.2d at 572 (no unanimity instruction is required if State elects one act to rely upon for conviction). The trial court record, however, does not support this contention. While the record indicates that the State emphasized the assault against Johnson to a greater extent than the assault against Otis, the State did not expressly elect to rely only on the assault against Johnson in seeking the conviction. The State proffered evidence, including the 911 call herein discussed and testimony by Johnson, indicating that an assault against Otis occurred. The State also referred to the assault against Otis in its closing argument. The State did not specifically elect to rely on the assault against Johnson.

¶23 The State next contends that the two assaults were merely alternative means of committing the charged crime of burglary in the first degree, rather than distinct criminal acts for which a unanimity instruction is required. We disagree.

¶24 Alternative means statutes identify a single crime and provide more than one means of committing that crime. *In re Det. of Halgren*, 156 Wn.2d 795, 809, 132 P.3d 714 (2006); *State v. Arndt*, 87 Wn.2d 374, 376-77, 553 P.2d 1328 (1976). For example, under RCW 9A.44.040(1)(a) and (b), rape in the first degree may be committed by the alternative means of either (1) using or threatening to use a deadly weapon or (2) kidnapping the victim. *State v. Whitney*, 108 Wn.2d 506, 510-11, 739 P.2d 1150 (1987). Where a single offense may be committed by alternative means under such a statute, unanimity is required as to guilt for the single crime charged but not as to the means by which the crime

was committed, so long as substantial evidence supports each alternative means. *Kitchen*, 110 Wn.2d at 410; *Whitney*, 108 Wn.2d at 508; *Arndt*, 87 Wn.2d at 376-77.

¶25 Despite the State's assertion to the contrary, the two assaults alleged here are distinct criminal acts, not alternative means of committing burglary in the first degree pursuant to RCW 9A.52.020. That statute provides in relevant part:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

RCW 9A.52.020(1). Under the statute, burglary in the first degree may be committed in two different ways, either by being armed with a deadly weapon or by assaulting any person. Accordingly, these two modes of commission constitute alternative means by which the crime of burglary may be proved. In contrast, the two assaults alleged in this case constitute only one mode of commission under the statute, i.e., assault. Even if the State offered evidence proving beyond a reasonable doubt that both alleged assaults occurred, Williams would nonetheless have committed burglary in the first degree by only one of the two alternative means outlined in RCW 9A.52.020. *Accord State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980) (holding that assaults alleged against two different individuals were not alternative means because they constituted "one mode of commission" under second degree assault statute). Thus, the two alleged acts constitute distinct criminal acts, not alternative means by which first degree burglary may be committed.[5] A unanimity instruction was required. *Petrich*, 101 Wn.2d at 572.

---

[5] The State further contends that the "essential inquiry is whether the evidence includes only one event, not whether the defendant participated in the event in more than one possible way." Suppl. Br. of Resp't at 3. The case cited in support of this contention, *State v. Hanson*, 59 Wn. App. 651, 657 n.7, 800 P.2d 1124 (1990), states: "In [alternative means] cases, the evidence includes only one event, even

¶26 The trial court erred by not providing an instruction requiring the jury to unanimously find that Williams assaulted Otis or to unanimously find that Williams assaulted Johnson in order to find Williams guilty of burglary in the first degree.

### III. *911 Call*

¶27 Williams next contends that the trial court erred by admitting into evidence the recording of the 911 call. He alleges both that the recording was not properly authenticated and that its admission violated his rights under the confrontation clause of the Sixth Amendment. Because this issue may arise on remand, we choose to reach the merits of Williams' contention. We hold that there was no error.

#### 1. Authentication

¶28 Williams contends that the recording of the 911 call was not properly authenticated because the State did not offer the testimony of any party to the call and because the recording did not contain a preamble indicating when and by whom it was recorded.

¶29 This court reviews a trial court's decision regarding the authenticity of an exhibit under an abuse of discretion standard. *State v. Payne*, 117 Wn. App. 99, 110, 69 P.3d 889 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶30 As stated in *Payne*, 117 Wn. App. at 106:

Authentication is a threshold requirement designed to assure that evidence is what it purports to be. 5C KARL B. TEGLAND,

though it discloses alternative means by which the defendant may have participated in that event." *Hanson*, 59 Wn. App. at 657 n.7. However, possible ways in which a defendant may participate in a crime are not the same as alternative means by which the crime can be committed. As herein discussed, different modes of commission under the applicable statute may constitute alternative means. On the other hand, distinct criminal acts that constitute only one mode of commission under the applicable statute are not alternative means. The two assaults alleged here are distinct criminal acts.

500

WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 900.2, at 175; § 901.2, at 181-82 (4th ed. 1999). The State satisfies ER 901, which requires that documents be authenticated or identified, if it introduces sufficient proof to permit a reasonable juror to find in favor of authenticity or identification. *State v. Danielson*, 37 Wn. App. 469, 471, 681 P.2d 260 (1984). "Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989).[6]

¶31 In making a determination as to authenticity, a trial court is not bound by the rules of evidence. ER 104(a), 1101(c)(1); *Danielson*, 37 Wn. App. at 471. A trial court may, therefore, rely upon such information as lay opinions, hearsay, or the proffered evidence itself in making its determination. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 104.5, at 98 (4th ed. 1999). Such information must be reliable but need not be admissible. *City of Bellevue v. Mociulski*, 51 Wn. App. 855, 860, 756 P.2d 1320 (1988).

¶32 A sound recording, in particular, need not be authenticated by a witness with personal knowledge of the events recorded. Rather, the trial court may consider any information sufficient to support the prima facie showing that the evidence is authentic.[7] *See State v. Jackson*, 113 Wn. App. 762, 769, 54 P.3d 739 (2002) (proponent can authenticate tape recording with conversation on it by any

---

[6] Tegland further elaborates: "The rules governing authentication are designed only to assure that the evidence meets minimum requirements for relevance. Thus, the rules require the proponent of the evidence to make only a so-called prima facie showing that the evidence is authentic. Contrary evidence is disregarded for purposes of determining authenticity." 5C TEGLAND, *supra*, § 900.2, at 175 (4th ed. 1999).

[7] ER 901 provides nonexclusive examples of information that may be considered by the trial court in determining whether a prima facie showing of authenticity is made, including "[a]ppearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances," ER 901(b)(4), and "[i]dentification of a voice . . . by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." ER 901(b)(5).

method that produces evidence sufficient to support basic findings of identification and authentication). Here, the trial court had both spoken to Otis in court and listened to the recording of the 911 call before it made the ruling on the recording's authenticity. The trial court was, therefore, in the best position to determine if Otis' voice matched that on the recording and to require any additional necessary authenticating evidence. Other factors, including the recital of Otis' address by the 911 caller, the fact that Otis admitted calling 911 when questioned by the court, and the fact that the events recounted by the caller were consistent with those testified to by Johnson all support the trial court's decision as to authenticity.

¶33 Williams also takes issue with the fact that information about the making of the recording was contained on a label affixed to the front of the CD containing the recording rather than in a spoken preamble at the beginning of the recording. While the inclusion of such information on a label rather than within a spoken preamble appears to be a break from prior practice, there is no indication that any less information was conveyed by the label than would have been conveyed by a spoken preamble. Similarly, no explanation was offered to the trial court as to why either method of conveying the information would be more or less reliable than the other. Thus, it was within the trial court's discretion to consider the information on the label in determining that the recording was properly authenticated.

¶34 The trial court did not abuse its discretion in ruling that the recording of the 911 call was properly authenticated.

### 2. Confrontation Clause

¶35 Williams next contends that the admission of the 911 call recording violated his rights under the confrontation clause of the Sixth Amendment, which guarantees criminal defendants the right to be confronted with the witnesses against them. Accordingly, a testimonial statement of a witness absent from trial

is properly admitted only where (1) the declarant is unavailable[8] and (2) the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

¶36 "Testimony" is typically defined as " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 U.S. at 51 (quoting 1 NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). The Court in *Crawford* expressly declined to offer a comprehensive definition of "testimonial" but stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

¶37 In *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2270-78, 165 L. Ed. 2d 224 (2006), the Supreme Court specifically addressed whether statements contained within a 911 call are testimonial. The Court assumed, for the sake of deciding that issue, that the acts of 911 operators constitute police interrogation and held:

> *Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.* They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 126 S. Ct. at 2273-74 (emphasis added). The Court further noted that 911 calls are ordinarily designed to describe current circumstances requiring police assistance

---

[8] In the trial court, the parties addressed the issue as to the admissibility of the 911 call as if Otis were unavailable, and the trial court ruled on the issue as if Otis were unavailable. Williams does not assign error to that determination. Thus, we are not called upon to determine if Otis was, in fact, unavailable. We note, however, that on remand the State is not relieved of its burden of demonstrating Otis' unavailability should Williams contend that she is, in fact, available to testify.

rather than to establish or prove past facts. *Davis*, 126 S. Ct. at 2276. Thus, 911 calls are not generally testimonial.

¶38 The circumstances under which the 911 call at issue in this case was made indicate that the primary purpose of the call was to secure police assistance to meet an ongoing emergency. The call was made very shortly after the incident took place. Moreover, many of Otis' statements during the call clearly demonstrated that her overriding purpose for calling 911 was to secure police assistance to ensure her safety and the safety of her children. Near the beginning of the call, Otis stated, "I am telling you some police officer better get here now" and "I can't have these men come shooting at my house." After the 911 operator asked Otis several questions about the incident, Otis' demands for police assistance became more insistent:

> Y'all are going to have to do something because me and my children live here and my whole door is kicked off the fucking hinge. And I want these men arrested. I don't care.

After the 911 operator asked Otis more clarifying questions, Otis made yet another vigorous request for police assistance:

> [T]here's not a police officer here yet! . . . And these men are dangerous. They are gang members and they map all these corners here. My life is in fucking danger and my kids right now. And no police officer is pulling up! I'm scared!

Otis' final statements, before the 911 operator ended the call, again convey Otis' desire for police assistance:

> I am sitting here scared for my fucking life and ain't nobody coming! Nobody!

¶39 Furthermore, the questions the 911 operator asked Otis were designed to gather information necessary to enable the police to respond to the emergency situation. For example, the operator asked Otis where the men were at the time of the call, in which direction they ran, and for a description of their physical appearance. These questions were designed to elicit facts necessary to allow the police to

safely and quickly respond to the situation, thereby providing Otis with the protection she was seeking. Similarly, the operator asked Otis whether the men were armed. That question was clearly designed to best ensure the safety of the responding officers.

¶40 During the call, Otis did provide information of past facts in response to questions by the 911 operator and state that she wanted the men involved arrested. As a whole, however, the 911 call was made under circumstances objectively indicating that the primary purpose of the questions asked by the 911 operator and the statements made by Otis were to enable police assistance to meet an ongoing emergency rather than to establish or prove past events potentially relevant to later criminal proceedings. Accordingly, the 911 call was not testimonial. *Davis*, 126 S. Ct. at 2273-74.

¶41 The trial court's ruling admitting into evidence the recording of the 911 call did not violate Williams' rights under the confrontation clause of the Sixth Amendment.[9]

¶42 Affirmed in part, reversed in part, and remanded.

BAKER and Cox, JJ., concur.

Motions for reconsideration denied January 26, 2007.

---

[9] Williams also contends that the trial court erred by providing a further instruction to the deliberating jury without first consulting with Williams or his attorney. We do not foresee the circumstances giving rise to this issue arising again on remand. Thus, we do not reach the merits of that contention.