

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 73154-8-I |
| | ) | |
| v. | ) | |
| | ) | |
| D'ANGELO CORDAY BROWN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 20, 2016 |
| | ) | |

DWYER, J. — D'Angelo Brown challenges his jury conviction for fourth degree assault – domestic violence for assaulting his former girlfriend, Bria Gomez. Brown contends that the trial court erred by admitting into evidence portions of a 911 call made by a nontestifying witness. Because the challenged statements were nontestimonial, we affirm.

I

At around 8:30 a.m. on November 22, 2013, an unidentified male placed a 911 call to report that a man and a woman in a neighboring apartment were arguing with each other and that the woman had broken the apartment window. The male stated, "we need the police," and gave the address of the apartment complex. The male had difficulty responding to the remainder of the 911 operator's questions due to a language barrier, and handed the phone to a second unidentified male.

The second male told the operator "[t]here's a guy attacking a lady" inside an apartment on the first floor, and identified the location of the apartment. The following exchange then occurred:

OPERATOR: And they're inside the apartment now?
MALE: Yes, they are.
OPERATOR: Okay, and it's a male and a female physically fighting?
MALE: Yes.
OPERATOR: And do you see them or are you hearing them?
MALE: No, I heard her and she's outside now.
OPERATOR: She's outside?
MALE: Yeah, she is outside now with a baby.
OPERATOR: Does she need medical attention?
MALE: Yes, she does.
OPERATOR: Okay, does she look injured how do you know she needs medical attention [sic]?
MALE: Cause, she got beat on.

The second male informed the operator "she's outside beside me" and "[s]he's cryin'." He also told the operator that the assailant left the apartment on foot and it was unclear whether the assailant had a weapon.

The operator asked the second male to put the woman on the phone. The woman identified herself as Gomez and the man who assaulted her as Brown, her ex-boyfriend. Gomez stated that Brown hit her with his fist and that she had to break the window in her apartment in order to escape from him. Gomez told the operator that Brown took her wallet and phone and fled on foot.

The State charged Brown by amended information with fourth degree assault – domestic violence and unlawful imprisonment – domestic violence. Prior to trial, the State sought to admit a recording of the 911 call, with the expectation that neither of the unidentified males nor Gomez would testify at trial.

-2-

Brown objected. The trial court excluded the statements of the first male because they were difficult to understand and did not appear to be based on personal knowledge. The trial court admitted the statements made by the second male and Gomez.[1]

A jury convicted Brown of fourth degree assault and acquitted him of unlawful imprisonment.[2] Brown appeals.

II

Brown contends that the admission of the recording of the 911 call violated his right to confrontation under the Sixth Amendment. We review de novo alleged confrontation clause violations. State v. Kronich, 160 Wn.2d 893, 901, 161 P.3d 982 (2007).

The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The confrontation clause bars the admission of "testimonial" statements of a witness who does not appear at trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

---

[1] The trial court made minor redactions to the recording that are not at issue here.
[2] The jury also convicted Brown of six counts of misdemeanor violation of a court order based on phone calls he made to Gomez after his arrest. Brown does not challenge these convictions.

-3-

Neither party disputes that the second unidentified male was unavailable to testify or that Brown had no prior opportunity for cross-examination. The sole issue is whether the admitted statements were testimonial.

In Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the United States Supreme Court addressed whether statements contained within a 911 call are testimonial. In doing so, the Court articulated what has come to be known as the "primary purpose" test:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822.

We analyze four relevant factors in determining the primary purpose of a statement for confrontation purposes. First, we examine the timing of the statements relative to when the described events occurred. State v. Reed, 168 Wn. App. 553, 563, 278 P.3d 203 (2012). A speaker describing events as they are actually occurring indicates an ongoing emergency. Reed, 168 Wn. App. at 563. Second, we look at "what was asked and answered during the interrogation to determine whether the elicited statements were necessary to resolve a present emergency or merely to determine what happened in the past." Reed, 168 Wn. App. at 563-64. Third, we consider whether a reasonable listener would conclude that the speaker was facing an ongoing emergency that required help.

Reed, 168 Wn. App. at 564. Finally, we evaluate "the level of formality of the interrogation." Reed, 168 Wn. App. at 564. "[D]isorganized questioning in an exposed, public area that is neither tranquil nor safe tends to indicate the presence of an ongoing emergency." Reed, 168 Wn. App. at 564. Because the typical primary purpose of a 911 call is to request police or medical assistance rather than to establish facts for the sake of a future prosecution, they "are not generally testimonial." State v. Williams, 136 Wn. App. 486, 503, 150 P.3d 111 (2007).

Here, the record demonstrates that the challenged statements were not testimonial in nature. First, the call was made while the incident was actually happening. The second male speaker heard the sounds of Brown assaulting Gomez and then saw Gomez flee the apartment in tears. Second, the operator's questions were designed to gather information necessary to enable the police to safely and effectively respond to the emergency situation. The operator twice asked the second male speaker whether Gomez needed medical assistance. The operator also asked whether Brown was still present at the scene and whether he had weapons. Third, it was clear that the call involved an ongoing emergency. At the time that the second male speaker took over the phone, Brown was still in the apartment. Even after Brown left the apartment on foot, he was clearly close by and could have returned at any moment. Finally, the conversation lacked formality. The operator's questions are repeatedly interrupted by a radio dispatcher, and Gomez can be heard sobbing throughout the call. We conclude that the circumstances under which the 911 call in this

case was made indicate that the primary purpose of the call was to secure police assistance to meet an ongoing emergency.

Brown argues that even if the second male speaker's initial statements were an attempt to obtain assistance for Gomez, they became testimonial when he "began to point the finger" at Brown as the assailant. But at no point did the male speaker identify Brown by name as the assailant. Moreover, attempts by a 911 operator to establish identifying characteristics of an assailant in order to aid dispatched officers in their response tend to indicate that the primary purpose is to provide emergency assistance. Reed, 168 Wn. App. at 564.

Because the challenged statements were nontestimonial, the admission of the recording of the 911 call did not violate Brown's Sixth Amendment right to confrontation.

Affirmed.

We concur:

Cox, J.

Becker, J.