IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32156-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG HOWARD WALLACE, II, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Craig Wallace appeals his conviction of multiple counts of violating no-contact orders. He contends that the trial court erred by admitting recordings of offending phone calls that he made from the Thurston County jail without sufficient authentication and over his hearsay objection, that he received ineffective assistance of counsel when his lawyer failed to raise a confrontation clause objection to admission of the recordings, and that the State's charging document failed to allege all essential elements of obstructing a law enforcement officer. Because we find no reversible error or abuse of discretion and Mr. Wallace's pro se statement of additional grounds raises no meritorious challenge, we affirm.

FACTS AND PROCEDURAL BACKGROUND

In October 2011, a no-contact order issued restraining Craig Wallace from contacting or coming within 500 feet of his girl friend, Mony Leap. Yet early in the

evening on New Year's Day 2012, his presence near the front door of Ms. Leap's apartment was reported to police. When officers arrived at the apartment, Mr. Wallace, who was then on the steps of the porch, took off running. Deputy Rod Ditrich chased him but the pursuit proved fruitless. A few days later, on January 4, officers arrested Mr. Wallace after responding to a further report of a protection order violation at Ms. Leap's apartment. This time Mr. Wallace was inside when officers arrived; after they established a perimeter around the apartment and told Ms. Leap that they would obtain a search warrant (Ms. Leap had denied that Mr. Wallace was present), Mr. Wallace came out of the apartment and surrendered without incident.

Following Mr. Wallace's arrest, a further no-contact order was issued that restrained Mr. Wallace from contacting Ms. Leap by telephone. Undeterred, Mr. Wallace, who was being held in the Thurston County jail, placed 14 telephone calls to Ms. Leap from the jail between January 30 and February 6. The calls, which were recorded routinely by the jail's telephone operating system, were all made on Mr. Wallace's jail account, to a phone number that Ms. Leap had earlier provided to police as a contact number.

At trial, the State offered a compact disc (CD) containing portions of the recorded telephone calls as evidence. Defense counsel initially objected to admission of the recordings based on lack of authentication and, later, on the basis of hearsay. The objections were overruled. At the conclusion of trial, Mr. Wallace was found guilty as charged. He appeals.

2

ANALYSIS

Mr. Wallace assigns error to the trial court's (1) admitting recordings of telephone conversations without sufficient authentication; (2) admitting the recordings over his hearsay objection; (3) permitting him to be represented ineffectively, by counsel who failed to raise a confrontation clause objection to admission of the recordings; and (4) submitting the charge of obstructing a law enforcement officer to the jury despite the State's failure to allege an essential element of the crime in the information. We address the alleged errors in turn.

## I. Authentication

Mr. Wallace challenges the sufficiency of the authentication of the calls recorded from the Thurston County jail. He emphasizes the facts that the State had no witness familiar with Ms. Leap's voice who could identify her as the female speaker and that the female speaker never identified herself during the call as Mony or Mony Leap. Mr. Wallace argues that while circumstantial evidence can augment direct evidence of a speaker's voice on a recording, authentication requires either a witness able to identify the voice or self-identification by the speaker. He cites as support *State v. Williams*, 136 Wn. App. 486, 150 P.3d 111 (2007); *Passovoy v. Nordstrom, Inc.*, 52 Wn. App. 166, 171, 758 P.2d 524 (1988); and *State v. Danielson*, 37 Wn. App. 469, 681 P.2d 260 (1984).

The recordings offered by the State were relevant only if they were, in fact, calls initiated by Mr. Wallace to Ms. Leap. The evidentiary rule of authentication requires that

3

a proponent present evidence sufficient to support a finding that the proffered item is what the proponent claims. ER 901(a); *State v. Rodriguez*, 103 Wn. App. 693, 701, 14 P.3d 157 (2000), *aff'd*, 146 Wn.2d 260, 45 P.3d 541 (2002). Because the determination of admissibility is a preliminary question, the rules of evidence do not limit the evidence that can be offered for authentication. ER 104(a); *Passovoy*, 52 Wn. App. at 170. A trial court may rely upon hearsay or the proffered evidence itself; the information supporting the determination need only be reliable. *Williams*, 136 Wn. App. at 500-01. The identity of a party to a telephone conversation may be established by either direct or circumstantial evidence. *Danielson*, 37 Wn. App. at 472. The court should admit the evidence if there is sufficient proof to permit a reasonable juror to find in favor of authentication, or identification. *Passovoy*, 52 Wn. App. at 171.

The three cases that Mr. Wallace relies upon for the proposition that authentication requires a witness able to identify the voice of the speaker or the speaker's self-identification all involved incoming telephone calls, with no evidence as to the phone number from which the call was initiated. In *Williams*, the recording at issue was of a victim's call to 911, reporting that she had been burglarized. 136 Wn. App. at 499. In *Passovoy*, a personal injury plaintiff sought to testify to a call he received from a woman who identified herself as the Nordstrom department store employee assigned to handle his claim. 52 Wn. App. at 168. In *Danielson*, the State wanted to offer a police officer's testimony about a call received from a defendant who self-identified and admitted to

4

having committed a crime. 37 Wn. App. at 471. It is fair to say that in the case of an incoming call, to a recipient who does not recognize the caller's voice and who is not told who is calling, circumstantial evidence alone would ordinarily be insufficient to persuade a reasonable juror of the caller's identity.

Here, however, the State presented evidence on the security features of its telephone operating system and the information recorded by the system to demonstrate that the recorded calls were placed by Mr. Wallace to a telephone number that was used by Ms. Leap. That solid evidentiary starting point was lacking in the cases on which Mr. Wallace relies. In addition, there was significant circumstantial evidence from the substance of the conversations that the female speaker was Ms. Leap, including references to an arrest of the female speaker by sheriff's deputies that were consistent with an arrest of Ms. Leap; references to the female speaker's daughter by her name, which was the same as that of Ms. Leap's daughter; statements by both the male and female speaker, referencing "Mony"; discussion between the two about who might have called in to report violations of a no-contact order, including speculation that it might have been "Lisa," which happened to be the name of Ms. Leap's landlord; discussions of a no-contact order and the male inmate's statement that he had shown his loyalty to their relationship by coming to the female's home despite the no-contact order; and professions of their love for one another.

5

The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). No abuse of discretion has been demonstrated.

### II. Hearsay

At trial, the State called Detective David Claridge to lay a foundation for admission of the recorded conversations. When the State moved for admission of the CD containing portions of the recordings, the defense unsuccessfully objected on hearsay grounds. Mr. Wallace argues on appeal that in order for the jury to find that Mr. Wallace was in fact talking to Ms. Leap, it would have to be relying on the statements of the female caller for the truth of the matter asserted, "for otherwise the conversations are irrelevant." Br. of Appellant at 9.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Where a statement is not offered for the truth of its contents but for another relevant purpose, the statement is not hearsay and is admissible. *See State v. Iverson*, 126 Wn. App. 329, 337, 108 P.3d 799 (2005). We review a trial court's hearsay ruling for an abuse of discretion. *State v. Strauss*, 119 Wn.2d 401, 417, 832 P.2d 78 (1992). Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

6

To be relevant, the female speaker's statements must have encompassed information about Ms. Leap's actual life and circumstances sufficient to support a finding by the jury that Ms. Leap was the speaker. From that, Mr. Wallace reasons that the statements were being offered for their truth, but this is a mistake. To illustrate why, consider a variation on a classic hearsay illustration: "I am the Pope." The statement is hearsay if offered to prove that the speaker is the Pope, but is not hearsay if offered on the issue of the speaker's mental competence. For present purposes, assume that the next-door neighbor of an individual named Duncan Richardson says, "Duncan Richardson is the Pope." This statement, too, is hearsay if offered to prove that Duncan Richardson is the Pope and not hearsay if offered on the issue of competence; it is also not hearsay if it is offered as evidence that the speaker is aware of the existence of his neighbor, Duncan Richardson (and, for that matter, that he has delusions about Mr. Richardson).

The statements of the female speaker on the recorded conversations were offered to demonstrate her awareness of her surroundings and events she had experienced, which, together with the evidence that the calls were placed to Ms. Leap's telephone number, would support a finding by the jury that the calls were placed to Ms. Leap. They were not offered to prove the truth of what she said about her surroundings and events she had experienced. The trial court did not abuse its discretion when it overruled the hearsay objection.

### III. *Ineffective Assistance*

Mr. Wallace next argues that because there was no showing that the female speaker on the recorded conversations was unavailable for trial or had been subject to prior cross-examination, admission of the recordings violated his Sixth Amendment right to be confronted with witnesses against him. He contends that his trial lawyer's failure to object to the recordings on the basis of the confrontation clause constituted ineffective assistance of counsel.

To establish a claim for ineffective assistance of counsel, the defendant must prove that his lawyer's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the outcome. *In re Det. of Strand*, 139 Wn. App. 904, 912, 162 P.3d 1195 (2007) (citing *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)), *aff'd*, 167 Wn.2d 180, 217 P.3d 1159 (2009). When a trial lawyer fails to object to the admission of evidence, a defendant alleging ineffective assistance must show that the trial court would likely have sustained the objection. *Id.* at 912-13 (citing *In re Det. of Stout*, 159 Wn.2d 357, 377, 150 P.3d 86 (2007)). Mr. Wallace cannot meet his burden of showing that the trial court would likely have sustained a confrontation clause objection to admission of the recordings.

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "Witnesses" in this context are "those 'who bear testimony'" against a defendant.

8

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (internal quotation marks omitted) (quoting *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). While the Supreme Court has not provided a comprehensive definition of a "testimonial" statement, it has stated that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51.

We conclude that evidence of communications that is offered not for the substance of the communications, but to prove that the communications took place, is nontestimonial at the most fundamental level. *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) is instructive. In that case, the United States Supreme Court concluded that statements made to a 911 operator by an assault victim, Michelle McCottry, as her attacker was fleeing, were nontestimonial. In reaching that conclusion, the Court distinguished statements about events as they were actually happening from statements describing past events, observing that when Ms. McCottry provided information to police officers to meet an ongoing emergency,

> [s]he simply was not acting as a *witness*; she was not *testifying*. What she said was not "a weaker substitute for live testimony" at trial, like Lord Cobham's statements in *Raleigh's Case*, or Jane Dingler's *ex parte* statements against her husband in *King v. Dingler*, or Sylvia Crawford's statement in *Crawford*. In each of those cases, the *ex parte* actors and the evidentiary products of the *ex parte* communication aligned perfectly with their courtroom analogues. Ms. McCottry's emergency statement does not. No "witness" goes into court to proclaim an emergency and seek help.

No. 32156-8-III
*State v. Wallace*

547 U.S. at 828 (citations omitted) (quoting *United States v. Inadi*, 475 U.S. 387, 394,

106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986); citing *Raleigh's Case*, 2 How. St. Tr. 1 (H.L.

1603); *King v. Dingler*, 2 Leach 561, 168 Eng. Rep. 383 (O.B. 1791)).

This is an even clearer case of a speaker not acting as a witness. Suppose Ms.

Leap had been available at trial. The State would not have called her as a witness to elicit

any of the statements she made during her telephone conversations with Mr. Wallace.

She made no *statements* that implicated Mr. Wallace in a crime; it is evidence that he

placed a call to her that proved his guilt.

Even if we were not convinced that Ms. Leap's statements were nontestimonial for

this fundamental reason, we would still hold that an inmate's jailhouse telephone call to a

girl friend is ordinarily not testimonial. Mr. Wallace argues that the female speaker's

statements on the recorded conversations were testimonial because Thurston County's

use of warnings that calls from the jail were subject to recording and monitoring[1] would

---

[1] The trial court listened to the entire recording of calls outside the presence of the jury before admitting them. An example of the preface to an inmate's call, including the warning is:

> "AUTOMATED OPERATOR VOICE: This is a Telmate long distance operator with a prepaid call from:
> "MALE VOICE: Craig.
> "AUTOMATED OPERATOR VOICE: An inmate at Thurston County Jail. This call is subject to recording and monitoring. Your current prepaid balance is $6. Press one to accept the call. To deny this call . . . thank you for using Telmate."

Report of Proceedings (June 26, 2012) at 177.

10

lead an objective witness to believe statements made during a call would be available for use at a later trial. We agree with the decisions of two federal circuit courts that have held that an inmate's recorded jailhouse calls with acquaintances or family members are not testimonial.

The Ninth Circuit Court of Appeals addressed the issue in *Chio Haug Saechao v. Oregon*, 249 Fed. App'x 678 (9th Cir. 2007) (unpublished opinion), in which a tape-recorded statement made during a jailhouse telephone call by a nontestifying codefendant was admitted at trial. The Ninth Circuit concluded that the Oregon appellate court, which deemed statements made during a jailhouse phone call as nontestimonial, had not unreasonably applied federal law. It noted that *Crawford* does not apply to an offhand, overheard remark; that there was no evidence suggesting that the statement made during the recorded call was made for the purpose of supplying evidence to the prosecution; and that the conversation was between two friends, without any active participation by a government official. *Id.* at 679.

The First Circuit Court of Appeals agreed in *United States v. Castro-Davis*, recognizing—as Mr. Wallace argues here—that persons speaking with an inmate may be repeatedly warned that telephone conversations are recorded, but concluding that the mere fact of the warning does not transform an inmate's conversations with his acquaintances and loved ones into "'solemn declarations made to government officials in

11

circumstances that resemble the repudiated civil-law mode of interrogation.'" 612 F.3d

53, 65 (1st Cir. 2010) (quoting *United States v. Brito*, 427 F.3d 53, 68 (1st Cir. 2005)).

If a party fails to satisfy one element of an ineffective assistance of counsel claim,

a reviewing court need not consider both. *State v. Foster*, 140 Wn. App. 266, 273, 166

P.3d 726 (2007). Because Mr. Wallace cannot demonstrate that Ms. Leap's statements in

the recordings were testimonial and that his objection on confrontation clause grounds

would have been sustained, we need not consider prejudice.

## *IV. Deficient Charging Document*

Finally, Mr. Wallace argues that the amended information was defective in failing

to allege as to the third count—obstructing a law enforcement officer—that he knew the

law enforcement officer was discharging official duties at the time of the crime.

"All essential elements of a crime . . . must be included in a charging document in

order to afford notice to an accused of the nature and cause of the accusation against

him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). The essential elements

rule is grounded in the Sixth Amendment to the United States Constitution and article I,

section 22 of the Washington State Constitution. *See id.*

"An 'essential element is one whose specification is necessary to establish the very

illegality of the behavior' charged." *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640

(2003) (quoting *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)). Essential

elements include both statutory and nonstatutory elements. *Kjorsvik*, 117 Wn.2d at 101-02.

12

The jury was instructed that to convict Mr. Wallace of obstructing a law enforcement officer under RCW 9A.76.020, the State must prove three elements of the crime beyond a reasonable doubt:

> (1) That on or about January 1, 2012, the defendant willfully hindered, delayed, or obstructed a law enforcement officer in the discharge of the law enforcement officer's official powers or duties;
> (2) That the defendant knew that the law enforcement officer was discharging official duties at the time; and
> (3) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 51. The instruction was derived from 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 120.02, at 468 (3d ed. 2008).

The State's amended information alleging that Mr. Wallace obstructed a law enforcement officer read, by comparison, as follows:

> In that the defendant, CRAIG HOWARD WALLACE, II, State of Washington, on or about January 1, 2012, did willfully hinder, delay, or obstruct any law enforcement officer in the discharge of his or her official powers or duties.

CP at 11. While this charging language tracks the language of RCW 9A.76.020, it fails to allege that the defendant knew that the law enforcement officer was discharging official duties at the time, a subjective knowledge requirement that appears to have been identified as an essential element for the first time in *State v. CLR*, 40 Wn. App. 839, 700 P.2d 1195 (1985). *CLR* relied for authority on a Maryland decision, *Cover v. State*, 297 Md. 398, 466 A.2d 1276 (1983). It is well settled that reciting the statutory elements of

13

the crime charged may not be sufficient. *Kjorsvik*, 117 Wn.2d at 98-99 (quoting *State v. Leach*, 113 Wn.2d 679, 688, 782 P.2d 552 (1989)).

Mr. Wallace is correct, then, that the subjective knowledge requirement should have been alleged in the information. The question that remains is whether the information was so deficient that it requires that we reverse. Because Mr. Wallace failed to challenge the charging document until he appealed following conviction, we liberally construe the language of the charging document in favor of validity. *State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013) (citing *Kjorsvik*, 117 Wn.2d at 105). Under a two-prong approach announced in *Kjorsvik*, we ask whether the necessary facts appear in any form or can be found by fair construction in the charging document; if they do, then the defendant's challenge cannot succeed unless he shows that he was nonetheless actually prejudiced by the inartful language that caused a lack of notice. *State v. Goodman*, 150 Wn.2d 774, 788, 83 P.3d 410 (2004) (citing *Kjorsvik*, 117 Wn.2d at 105-06).

The amended information charged that Mr. Wallace "willfully" hindered, delayed, or obstructed a law enforcement officer in the discharge of his or her official powers or duties. A charge that an act was done "willfully" typically indicates that it was done deliberately or knowingly. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (1993) (defining "willful" as "done deliberately : not accidental or without purpose : INTENTIONAL, SELF-DETERMINED"). By statute, "[a]

14

requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears." RCW 9A.08.010(4). In *State v. Krajeski*, 104 Wn. App. 377, 386 n.3, 16 P.3d 69 (2001), the court observed with respect to a similar allegation of mens rea, "unlawfully and willfully," that "[i]t has long been the law in Washington that the phrase 'unlawfully and willfully' in an information sufficiently alleges criminal knowledge."

When liberally construed in favor of its validity, the amended information's allegation that Mr. Wallace's obstruction of an officer in the discharge of his official duties was "willful" implies that Mr. Wallace knew the law enforcement officer was discharging official duties at the time. Since the necessary elements can be found in the charging document by fair construction and Mr. Wallace does not attempt to demonstrate actual prejudice, the State's omission of an essential element from the amended information is not reversible error.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Wallace states two: that the prosecutor engaged in prosecutorial misconduct and that the trial judge should have recused himself due to a conflict of interest. We address them in turn.

*Prosecutorial Misconduct.* Mr. Wallace contends that the prosecutor mischaracterized the testimony of Deputies Rod Ditrich and David Claridge during

closing argument. To succeed on a claim of prosecutorial misconduct, a defendant must allege and demonstrate that the comment was both improper and prejudicial. Because the only objection that was made to the argument was tardy—raised only after arguments were completed and the jury was dispatched to deliberate—the statements must have also been flagrant and ill intentioned.

Mr. Wallace argues that the prosecutor mischaracterized Deputy Ditrich's testimony when she argued that the deputy recognized Mr. Wallace at Ms. Leap's apartment on the January 1 date on which he responded to the 911 call. Yet the deputy testified on direct examination that while Mr. Wallace was not facing the officers when they arrived and he was initially unsure of his identity, "[a]s soon as he turned and saw us driving in, then he turned and ran. I recognized him at that point as being the defendant." Report of Proceedings (RP) (June 25, 2012) at 71. On cross-examination, the deputy affirmed that he came "within just a few feet" of Mr. Wallace, at which point Mr. Wallace "turned, made eye contact, he looked at me for just a second. He had that look like, oh, crap. And he took off, and he ran." *Id.* at 95, 100. Mr. Wallace fails to demonstrate misconduct.

Mr. Wallace argues that the prosecutor mischaracterized Deputy Claridge's testimony by telling the jury that the deputy had spoken with Ms. Leap; the deputy's consistent testimony had been that he had not spoken with her and could not identify her voice. His allegation of misconduct is based on a single statement by the prosecutor in

16

the course of arguing why it was reasonable for Deputy Claridge not to investigate

ownership of the telephone whose number Mr. Wallace had called. The prosecutor

stated:

> Detective Claridge didn't need to do that, because he already was familiar with Mony Leap. She had past contacts with the Sheriff's Office. And when he ran the search and reviewed past records, he saw, oh, this is one of her phone numbers.

RP (June 27, 2012) at 430. In context, it appears that the prosecutor was not arguing that

the deputy had spoken with Ms. Leap and was familiar with her voice, but only that he

was aware of her prior encounters with his department that led him to suspect from the

*content* of the calls that she was the female voice. *See, e.g.*, RP (June 26, 2012) at 271-72

(testimony from the detective that while he had not spoken to Ms. Leap on the phone

before listening to the recorded calls, he did have information about her). Again, Mr.

Wallace fails to show misconduct. Moreover, and as was pointed out by the trial court in

denying the tardy objection to the prosecutor's argument, the jury had been instructed,

verbally and in writing, that the lawyers' arguments were not evidence and that it was to

disregard any statement or argument that was not supported by the evidence.

*Appearance of Fairness.* Mr. Wallace next contends that the trial judge should

have recused himself based on his prior representation of Ms. Leap in a separate matter

that was tried in December 2011. Nothing in the record indicates that the judge

previously represented Ms. Leap. Because any error in failing to recuse depends upon

17

No. 32156-8-III
*State v. Wallace*

proof outside the record, Mr. Wallace's remedy is to seek relief by personal restraint

petition. *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Lawrence-Berrey, J.

18